# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

---

| | |
|---|---|
| (1) Hitch Enterprises, Inc.; | ) |
| (2) David D. Duncan; and | ) |
| (3) Sagacity Inc., on  behalf of | ) |
| themselves and all others similarly | ) |
| situated, | ) |
| | ) |
|        Plaintiffs, | ) |
| | ) |
| v. | )     **Case No. CIV-11-13-W** |
| | ) |
| (1) Cimarex Energy Co.; | ) |
| (2) Key Production Company, Inc.; | ) |
| (3) Magnum Hunter Production, Inc.; | ) |
| (4) Prize Energy Resources, L.P.; and | ) |
| (5) Gruy Petroleum Management | ) |
|    Company (n/k/a Cimarex Energy | ) |
|    Company of Colorado), | ) |
| | ) |
|        Defendants. | ) |

---

## PLAINTIFF CLASS'S RESPONSE BRIEF IN OPPOSITION TO OBJECTION (Dkt. 96) AND IN FURTHER SUPPORT OF THE PREVIOUSLY FILED MOTION FOR AWARDS OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND INCENTIVE AMOUNTS (Dkt. 91)

Rex A. Sharp, OK #011990
Gunderson, Sharp & Walke, L.L.P.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0500
(913) 901-0419 fax
rsharp@midwest-law.com

Attorneys for Plaintiff Class

# Table of Contents

INTRODUCTION ....................................................................................... 1

I.   THE OBJECTION IS FACTUALLY FALSE BECAUSE CLASS
     COUNSEL DID FILE THE FEE MOTION BEFORE THE
     OBJECTION DEADLINE.............................................................. 3

II.  THE OBJECTION IS LEGALLY WRONG BECAUSE
     FEDERAL LAW DOES NOT GOVERN THE FEE AWARD........ 4

III. OKLAHOMA LAW AWARDS FEES IN A CONTINGENT
     CASE AS A PERCENTAGE OF THE COMMON FUND, NOT
     BASED ON LODESTAR ............................................................... 6

IV.  THE INCENTIVE AWARD IS ALSO BASED ON RESULTS .... 12

V.   PROFESSIONAL OBJECTIONS SHOULD BE
     DISCOURAGED........................................................................... 14

VI.  OBJECTOR CANNOT PRESENT EVIDENCE OR ARGUMENT
     AT FAIRNESS HEARING BEYOND WHAT APPEARS IN HER
     OBJECTION ................................................................................. 18

VII. CONCLUSION ............................................................................. 19

# FEDERAL CASES

*Barnes v. FleetBoston*, NO. 01 Civ. 10395, 2006 U.S. Dist. LEXIS 71072
(D. Mass. Aug. 22, 2006) ........................................................................ 17

*Been v. O.K. Industries, Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766
(E.D. Okla. Aug. 16, 2011) ................................................................. 5, 10

*Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351
(10th Cir. 1997) ......................................................................................... 4

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988) ............... 6

*Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991 (10th Cir. 2008) .................. 4

*Compusource Okla. Bd. of Trustees v. BNY Mellon, N.A., et al.*,
No. CIV-08-469-KEW, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ...... 6

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326,
100 S.Ct. 1166 .......................................................................................... 9

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ................................... 4, 5

*In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2007 WL 4225486
(S.D.N.Y. Nov. 28, 2007) ........................................................................ 16

*In re Charter Communications, Inc.*, MDL 1506, No. 02-CV-1186
(E.D. Mo. June 30, 2005) ........................................................................ 15

*In re Compact Disc Minimum Advised Price Antitrust Litigation*,
MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) ........................... 15

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ............ 16

*In re Initial Public Offering Securities Litigation*, 728 F.Supp.2d 289
(S.D.N.Y. 2010) ....................................................................................... 16

*In re Miniscribe Corp.*, 309 F.3d 1234 (10th Cir. 2001) ............................. 5

*In re Netflix Privacy Litig.*, No. 5:11-CV-379-EJD (N.D. Cal. 2012) ....... 15

*In re Online DVD Rental Antitrust Litig.*, No. 4:09-md-2029-PJH
(N.D. Cal. 2012) ..................................................................... 15

*In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d 1249 (D. Kan. 2006)......... 5

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
No. 06 Civ. 225, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ..................... 16

*Johnson v. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............... 6

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ... 17

*Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010) ........................................... 4, 5

*Spark v. MBNA Corp.*, 289 F.Supp.2d 510 (D. Del. 2003)........................ 15

*Spinelli v. Capital One Bank*, No. 8:08-CV-432-T-33EAJ
(M.D. Fla. 2010) ..................................................................... 15

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ........................... 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632
(5th Cir. 2012)............................................................................ 6

## STATE CASES

*Brown v. Wal-Mart*, No. 01-L85 (Ill. Cir. Ct. Oct. 29, 2009)...................... 2

*Brumley v. ConocoPhillips*, Case No. CJ-2001-5
(Okla. Dist. Ct. Texas County 2005) ........................................... 13

*Continental Res. v. Conoco, Inc.*, Consolidated Case Nos. CJ-95-739
And CJ-2000-356 (Okla. Dist. Garfield County Aug. 22, 2005)..... 9, 10, 13

*Fazekas v. ARCO*, Case No. C-98-65
(Okla. Dist. Ct. Latimer Co. 2002)............................................. 13

*Hess v. Volkswagen Group of America, Inc.*, No. CJ-2005-205
(Okla. Dist. Ct. Pottawatomie Co. Nov. 21, 2012).............................. 14, 15

*Laverty v. Newfield*, Case No. CJ-2002-101
(Okla. Dist. Ct. Beaver Co.)..................................................... 10

*Mitchusson v. EXCO Resources, Inc.*, No. CJ-2010-32
(Okla. Dist. Ct. Caddo County Nov. 8, 2011).......................... 10

*Mitchusson v. EXCO Resources, Inc.*, No. CJ-2010-32
(Okla. Dist. Ct. Caddo County Mar. 9, 2012).......................... 10

*Robertson v. Sanguine, Ltd.*, Case No. CJ-02-150
(Okla. Dist. Ct. Caddo County July 11, 2003)......................... 13

*Root v. Kamo Elec. Co-op., Inc.*, 1985 OK 8, 699 P.2d 1083.................... 7

*Rudman v. Texaco*, Case No. CJ-97-1-E
(Okla. Dist Ct. Stephens Co. 2001) ......................................... 13

*Sholer v. State ex rel. Dept. of Pub. Safety*, 1999 OK CIV APP 100,
990 P.2d 294 .......................................................................... 9

*Spencer v. OG&E Co.*, 171 P.3d 890 (Okla. 2007) ............................... 6, 7

*State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659 (Okla. 1979) ..... 7

*State ex rel. Oklahoma Bar Ass'n v. Flaniken*, 2004 OK 6, 85 P.3d 824 ..... 7

*Velma-Alma Independent School District No. 15 v. Texaco, Inc.*,
Consolidated Case Nos. CJ-2002-304, CJ-04-581-E and CJ-2005-496M
(Okla. Dist. Ct. Stephens County Dec. 22, 2005) ...................................... 13

## STATUTES AND LEGISLATIVE HISTORY

12 O.S. § 936 ................................................................................ 6

12 O.S. § 938 ................................................................................ 6

12 O.S. § 940 ................................................................................ 6

12 O.S. § 2023 ....................................................................................... 8

12 O.S. § 2023(G)(1) ............................................................................ 8

20 O.S. § 2023 ..................................................................................... 12

One, out of 29,689 class members, objects, *not* to the result achieved by the Class Representatives and Class Counsel, but only to how much they should be paid for achieving that result. Dkt. 96.[1] Wanting to participate in the benefits of the Settlement, the Objector chose to remain a member of the Settlement Class, rather than opt-out. But the Objector does not want to pay for the attorneys' fees and incentive award to the Class Representatives that enabled prosecution of the lawsuit and the multi-million dollar Settlement. Oklahoma law determines fees *ex ante, i.e.* before-the-fact, not *ex post, i.e.* after-the-fact. Here that means the Court considers the terms to which the Class Representatives and Class Counsel agreed, a percentage of one-third of the recovery and an application for incentive awards to the Class Representatives for their efforts in representing the Class. The lone Objector, Katherine Riesen Lathrop, complains, without presenting any evidence, that these terms are contrary to Oklahoma law or inconsistent with awards in most Oklahoma royalty owner class actions when they are not. She offers no evidence that the going rate for royalty underpayment class actions is below one-third—not by people with personal knowledge or with court awards in similar cases.  Nor

---

[1] This Response Brief addresses the Objection To Motion for Attorney's Fees and Incentive Awards to Lead Plaintiffs and Notice of Intention to Appear at Fairness Hearing (Dkt. 96).  Before the Objection was filed, the Plaintiff Class had filed Plaintiff Class's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Incentive Amount and Brief in Support (Dkt. 91).

does she cite **any** Oklahoma royalty owner class actions.  Her Objection is contrary to the overwhelming weight of the evidence and law.

Without evidence or law in the jurisdiction, what is her motivation to object? She owns a 0.00027130 royalty interest in the Layn Unit #1 well and a 0.00054254 royalty interest in the Layn Furry well, both in Stephens County, Oklahoma. Dkt. 96. Under the court-approved Plan of Allocation and Distribution Order, she stands to receive a combined **net** amount of approximately $22.47. Dkt. 89. If the Court approves the 25% fee Ms. Lathrop suggests instead, and awards no incentive award, she would recover approximately $26.33. **The difference is less than $4.00!** Most people would not hire an attorney for a possible $4.00 claim -- nor would most attorneys waste the Court's or the attorneys' time for less than $4.00. Logically then, the Objector must be hoping either to: 1) impose her view on the 29,688 Class Members who did not object to the one-third fee or the 1% incentive award; or 2) extort more than the $22 to $26 dollars she is entitled to under the Settlement. The former would be improper, and the latter unethical. Professional objector counsel who make improper objections have been referred to the in-state board of discipline. Order at 3, *Brown v. Wal-Mart,* No.01-L85 (Ill. Cir. Ct. Oct. 29, 2009), attached as **Exhibit A.**

I.     **THE OBJECTION IS FACTUALLY FALSE BECAUSE CLASS COUNSEL DID FILE THE FEE MOTION BEFORE THE OBJECTION DEADLINE**

The objector's lead argument that the fee motion was filed after the objection deadline is false. The objector claimed:

> Here, objections to Class Counsel's request for attorneys' fees was [sic] due on February 15, 2013. As of that date, Class Counsel had not filed their motion for an award of attorneys' fees on the docket, let alone on the settlement website.

Dkt. No. 96 at 2. [2] But, the fee motion (Dkt. No. 91) was filed on February 11, 2013, four (4) days before the February 15th deadline.  If the objector's counsel had checked PACER before filing the Objection on February 14th (Dkt. No. 96), they would have seen the fee motion was filed three (3) days earlier. Also, the fee motion was posted on the website established for this case and identified in the Class Notice (Dkt. No. 109-1 at 8),

http://www.strahm.com/CimarexOKclassaction.html,  on February 12th, also before the deadline and before the filing of the Objection. *See* Email string between Barbara Frankland and Pat J. Atkins, dated Feb. 11-12, 2013, attached as

---

[2]      Here, the Class Notice (Dkt. No. 109-1) sent out on January 30 and February 4 (Dkt. No. 109-1 at 1) stated that Class Counsel would seek a one-third fee, a 1% incentive award for the Class Representatives, and reimbursement of all expert and consulting fees and litigation expenses paid by Class Counsel. (Dkt. No. 109-1 at 6 of 15).

**Exhibit B**.  This disregard for the facts calls into question the rest of the objector's positions, which are similarly meritless.

## II.   THE OBJECTION IS LEGALLY WRONG BECAUSE FEDERAL LAW DOES NOT GOVERN THE FEE AWARD

The objector admits that "Oklahoma substantive law governs the award of attorneys' fees", Dkt. No. 96 at 6 (citations omitted), but proceeds to cite inapplicable and out-dated federal law.  The objector's positions again should be disregarded.

Objector cites *Gottlieb v. Barry*, 43 F.3d 474, 488 (10th Cir. 1994) to suggest a 25% "benchmark" fee is appropriate. Dkt. No. 96 at 4. But *Gottlieb* was decided 20 years ago. It involved a comprehensive settlement of both individual and class securities claims under *federal* law, not royalty owner underpayment claims, under *state* law. Where, as here, the case is before the Court under its diversity, as opposed to federal question, jurisdiction, the award of attorneys' fees is governed by state, not federal, law. *See, e.g., Combs v. Shelter Mut. Ins. Co.,* 551 F.3d 991, 1001 (10th Cir. 2008) ("In diversity cases, attorney fees are a substantive matter controlled by state law."); *Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency,* 123 F.3d 1351, 1352-53 (10th Cir. 1997) ("in this circuit, the matter of attorney's fees in a diversity suit is substantive and is controlled by state law.")

Objector misleadingly cites *Perdue v. Kenny A*., 130 S.Ct. 1662 (2010) to suggest application of a straight lodestar analysis with no multiplier. Dkt. No. 96 at

4. But *Perdue* was a fee shifting case where the lodestar approach is "the dominant method for assessing fees in fee-shifting disputes in federal court." *In re Miniscribe Corp.,* 309 F.3d 1234, 1243 (10th Cir. 2001). But, in common fund cases like this one, the Tenth Circuit has held the percentage-of-the-fund is the "preferred method" for awarding attorneys' fees. *In re Sprint Corp. ERISA Litig.,* 443 F.Supp.2d 1249, 1269 (D.Kan. 2006) (citation omitted). Indeed, *Gottlieb* reversed the district court for having applied the lodestar plus multiplier approach in a common fund case and directed application of the percentage fee method.  43 F.3d at 487.

From here, objector attempts to twist Magistrate West's ruling in *Been v. O.K. Industries, Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *11 (E.D. Okla. Aug. 16, 2011) (violation of federal Packers and Stockyards Act claim) into a lodestar cross-check. Dkt. No. 96 at 4. Objector's analysis misses the point. Magistrate West utilized a percentage to determine the fee, and discussed a lodestar cross-check in passing, not because the Tenth Circuit requires one. In a subsequent case, Magistrate West clarified that a lodestar cross-check is not necessary in a common fund case such as this:

> In making this award of attorneys' fees and reimbursement of expenses to be paid from the Gross Settlement Fund, the Court makes the following findings of fact and conclusions of law: (a) In the Tenth Circuit the preferred approach for determining attorney's fees in common fund cases is the percentage of the common fund method. *See, e.g. Gottlieb v. Barry*, 43

F.3d 486 (10th Cir. 1994); (b) Under this approach the trial court evaluates the reasonableness of the requested percentage by analyzing the applicable factors contained in *Johnson v. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *see Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988); (c) a majority of circuits recognize that trial courts have the discretion to award fees based solely on the fund approach and are not required to conduct a lodestar analysis in common fund class actions. *See e.g. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).

*Compusource Okla. Bd. of Trustees v. BNY Mellon, N.A., et al.*, No. CIV- 08-469- KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) (federal securities fraud class action). So, although federal law does not govern the award of attorney's fees in this common fund case, federal law supports the pure percentage fee method, *i.e.* without the need for a lodestar cross-check, as does controlling Oklahoma law.

## III. OKLAHOMA LAW AWARDS FEES IN A CONTINGENT CASE AS A PERCENTAGE OF THE COMMON FUND, NOT BASED ON LODESTAR

The only Oklahoma case the objector cites is *Spencer v. OG&E Co.*, 171 P.3d 890, 895 (Okla. 2007). Dkt. No. 96 at 6-7.  But *Spencer* was a declaratory judgment action by an individual who claimed to have paid her utility bill in full. When the utility confessed judgment, the consumer, as the prevailing party, sought attorneys' fees under fee shifting statutes, 12 O.S. §§ 936, 938, and 940. *Spencer*, 171 P.3d at 893-94. The *Spencer* court used a lodestar analysis as is appropriate for

fee-shifting cases. *See* Sec. II, *supra.* *Spencer* did not involve a class action initiated on a contingent-fee, rather than hourly, basis or a common fund settlement. It has nothing to do with this case.

Objector's attempt to mix fee-shifting lodestar cases and contingent fee common fund cases is misguided, unworkable, and unsupported by Oklahoma law. *See* Dkt. No. 91.  Class actions, including this one, are taken on a contingent fee, not hourly, basis.  Relying on only one Oklahoma case, Objector argues that the hourly or lodestar approach should be used to determine the fee award. Dkt. 96 at 6-7 (citing *Spencer v. OG&E Co.*, 171 P.3d 890, 895 (Okla. 2007)). But *Spencer* is not a class action, nor did it involve a contingent fee.  It was a fee-shifting case for which the *Spencer* court appropriately used a lodestar analysis.  *Spencer* cites *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 663 (Okl.1979), which was decided before the trend toward percentage fees, was not a class action, and was not initiated on a contingent fee. *Root v. Kamo Elec. Co-op., Inc.,* 1985 OK 8, 699 P.2d 1083, 1093 (*Burk* applies only when fee request is "*in the absence of a contract or a statute fixing the amount*") (emphasis in original) (awarding the one-third contingent fee contractual amount without a lodestar analysis). The same is appropriate here.  *See also State, ex rel. Oklahoma Bar Ass'n v. Flaniken*, 2004 OK 6, 85 P.3d 824, 827 (*Burk* not applicable when a contingent fee contract is involved).  If *Burk* ever applied to cases initiated on a contingent fee, or to class

actions, after 12 O.S. § 2023 (G)(1) was amended effective November 1, 2009, it does not apply to Oklahoma class actions now.

Logically, results, not hours, should drive a contingent fee award. Time does not measure results. Declaration of Michael Burrage ("Burrage Decl.") at 2-3, attached as **Exhibit C**. The contingent fee agreement aligns the interest of the attorney representing the Class to maximize the recovery for the Class. Both benefit from the results independent from the time spent. Class members want compensation; they can only spend results. Moreover, they are better off getting those results sooner rather than later.

Where there is no fee agreement and a party must rely on a fee-shifting statute to recover attorneys' fee, lodestar is used. Here there is a negotiated fee agreement with experienced Class Representatives, all of whom were sophisticated and two of whom are attorneys familiar with contingent fee litigation and even class actions. *See* Declarations of Little, Duncan, and Hitch, attached as Exhibits D, E, and F, respectively.

The contingent fee contracts in this case authorize the one-third fee award. *See* Sharp Decl. 91-1 at 12, 17, 26; Little Decl., Duncan Decl., and Hitch Decl. The Oklahoma class action statute expressly authorizes an award of fees pursuant to the contingent fee agreement. 12 O.S. § 2023 ("In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by

law *or by the parties' agreement*.") (emphasis added).  The contingent fee contract is not only consistent with the customary fee agreements in cases such as this one, it is on the lowest end of such contracts that can typically be as high as 40% or more with an increased percentage in the event of an appeal.  Oklahoma law provides that "the trial court may decide whether to approve the contingent fee agreement, and whether to extend the contingent arrangement to all class members." *Sholer v. State ex rel. Dept. of Pub. Safety*, 1999 OK CIV APP 100, 990 P.2d 294, 299-300 (citing *Deposit Guaranty Bank*, 100 S.Ct. at 1174). That is exactly what the trial court did in *Continental Res. v. Conoco*, *Inc*., Consolidated Cases CJ-95-739 and CJ-2000-356 (Okla. Dist. Ct. Garfield County) (Aug. 22, 2005, Order at 5-6), attached as **Exhibit G**:

> The Court has the authority to extend the contingency fee agreements entered into between the Class Representative and Class Counsel to the entire Class. [citing *Sholer, supra*]. The Court finds the 40% contingency fee percentage contained in the agreement between Class Counsel and the Class Representatives is within the typical range of contingency fee percentages for oil and gas class action litigation approved in this State.

> The Court finds: (a) that the 40% contingency fee agreement between Class Counsel and the Class Representatives is fair and reasonable and should be, and is hereby, approved and extended to the members of the Class….

The court should do the same in this case.

Besides, the Oklahoma case law in royalty underpayment class actions supports a one-third fee (or higher). Ex. C, Burrage Decl. at 4; *Mitchusson v. EXCO Resources, Inc.,* No. CJ-2010-32 (Okla. Dist. Ct. Caddo County) (Mot. for Attorney Fees, filed Nov. 8, 2011, at 3-5 (citing 28 oil and gas class action fee awards in Oklahoma) and Order (Mar. 9, 2012) (granting 40% fee) (attached as **Exhibits H and I**); *Laverty v. Newfield*, Case No. CJ-2002-101, (Okla. Dist. Ct. Beaver County) ("finding that the requested 40% fee is customary in these types of cases" and that "[a] contingent attorneys' fee of at least forty percent (40%) of the common fund is normative for this type of royalty owner class litigation") (emphasis added), attached as **Exhibit J**; *Cont'l Resources v. Conoco Inc.*, No. CJ-95-739 (Dist. Ct. of Garfield Cnty. Order of Aug. 22, 2005) ("The fee percentage in these types of cases is typically 40% of the gross fund."), attached as Ex. G. *See also Been* v. *O.K. Industries, Inc.,* No. CIV-02-285-RAW, 2011 WL 4478766, at *5 (E.D. Okla. Aug. 16, 2011) ("[A] source of comparison is the oil and gas class action settlements in Oklahoma … In those cases, there is a consensus for a 40% fee award.").

Although there are many Oklahoma class actions against which to measure the reasonableness of a contingent fee, including royalty underpayment class actions, the objector did not cite a single one.   Retired Judge Burrage's Declaration, Ex. C, catalogues 28 Oklahoma oil and gas underpayment class

actions, with an average fee award of 36.5%; 25/28 or 89% have been at least one-third; and almost half have been fee awards at 40% or higher. Class counsel has only asked for a fee at the lower end of the range. Ex. C, Burrage Decl. at 4. As retired Judge Burrage correctly noted, "[a]n award of less than one-third of the common fund would be atypical." Ex. C. Burrage Decl. at 4.            Another former judge of this court Layn R. Phillips served as mediator in this case and became familiar with the facts and circumstances. His efforts contributed to the parties' successful resolution of this case. He stated:

> Based upon my experience as a former federal judge in the Western District of Oklahoma and as a mediator, it is my opinion that a request by, and award to, Class Counsel for an attorneys' fee in the range of 33⅓-40% of the $16.4 million settlement fund along with the value attributable to claims administration and for reimbursement of actual litigation expenses would be reasonable and appropriate given the complexity of this matter and the significant relief recovered by Class Counsel. It is also my opinion that a fee award in that range is in line with the amounts approved by courts in the Western District of Oklahoma and the Tenth Circuit as being fair and reasonable in contingent fee class action litigation such as this. Finally, I understand that Class Counsel intends to only request a 33⅓% fee, which is imminently reasonable under the circumstances.

Dkt. 82-2 at 5. The evidence shows that a reasonable and usual contingent fee agreement is between 33 1/3% to 40%. All experts support the fee award of one-third. Objector presented no evidence to rebut those expert opinions. This case is a uniquely difficult royalty underpayment class action because it involves almost

exclusively processing deductions and multiple entity defendants.  Ex. C, Burrage Decl. at 4-6.  Reviewing either the 13 factors in 20 O.S. § 2023 or the 8 Oklahoma ethics factors, the result is the same.  *See* Sharp Decl. Dkt. 91-1 at 7-12. The objector disputes none of these factors.").  The weight of the evidence and of Oklahoma case and federal law support a finding that a one-third fee is reasonable in this class case.  As, former Judge Burrage put it, the one-third fee request is eminently reasonable. Ex. C, Burrage Decl.

## IV.   THE INCENTIVE AWARD IS ALSO BASED ON RESULTS

The results obtained, not the hours expended, also drive the amount awarded to Class Representatives for investigating the factual claims, gathering documents, interviewing counsel, strategizing with counsel, reviewing filings, bringing and pursuing the claims, mediating the claims, all on behalf of themselves and the Class.  Spending more time and money to reach a different result (maybe a better one, maybe a worse one) only drags out the process and provides the Class only uncertainty.  Class Representatives are not experts to be paid hourly. They are investing their efforts in the case from before the filing of the claims through the end, whether that be with final approval of a settlement, a trial of the claims, or on appeal. They work with Class Counsel to achieve a fair, adequate, and reasonable result for the Class when weighed against further litigation. Making an incentive award based strictly on the number of hours invested would be counterproductive,

would countenance wastefulness rather than efficiency, and would devalue the results obtained.  For these reasons, among others, Oklahoma law has consistently applied the percentage approach of 1-2% of the common fund for incentive awards. Ex. G, *Continental Res. v. Conoco*, *Inc*., Consolidated Cases CJ-95-739 and CJ-2000-356 (Okla. Dist. Ct. Garfield County Aug. 22, 2005) ("Court awards to Class Representatives of 1% of the common fund are typical in these types of actions, with some awards approaching 5% of the common fund"); *Velma-Alma Independent School District No. 15 v. Texaco, Inc*., Consolidated Case Nos. CJ-2002-304, CJ-04-581-E and CJ-2005-496M (Okla. Dist. Ct. Stephens County Dec. 22, 2005) (awarding 1.07% of the respective total settlement amounts), attached as **Exhibit K**; *Robertson v. Sanguine, Ltd.,* Case No. CJ-02-150, (Okla. Dist. Ct. Caddo County July 11, 2003) (approving 1%), attached as **Exhibit L**; *Fazekas v. ARCO*, Case No. C-98-65 (Okla. Dist. Ct. Latimer County 2002) (awarding 6.40%), attached as **Exhibit M**; *Rudman v. Texaco*, Case No. CJ-97-1-E (Okla. Dist. Ct. Stephens County 2001) (awarding 1.00%), attached as **Exhibit N**; *Brumley v. ConocoPhillips*, Case No. CJ-2001-5 (Okla. Dist. Ct. Texas Co. 2005) (awarding 1.13%) attached as **Exhibit O**.  An award of 1% of the $16.4 million settlement to be split equally among the three Class Representatives is reasonable. *See also* Ex. C, Burrage Decl. at 6-7.

As before, the objector cites inapplicable federal law rather than Oklahoma law on incentive awards. Oklahoma law shows the combined request of 1% to be divided among all three (3) Class Representatives is at the low end of the reasonable range. Out of more than 29,000 royalty owners, only these three (3) invested their time and effort and risked scrutiny and retaliation. *See* Exs. D, E and F, Decls. of Little, Duncan, and Hitch.

## V.     PROFESSIONAL OBJECTIONS SHOULD BE DISCOURAGED

Ms. Lathrop's counsel, Mr. John J. Pentz II and Mr. Stephen C. Griffis (Dkt. 122), are professional objectors to class action settlements.

At least one Oklahoma state court has recognized Mr. Griffis' status as a "well-known professional objector". *See* Amended Order of Final Judgment Granting Final Approval of Settlement and Certification of Class, *Hess v. Volkswagen Group of America, Inc*., No. CJ-2005-205 (Okla. Dist. Ct. Pottawatomie CountyNov. 21, 2012) (overruling objection filed Dec. 20, 2012), attached as **Exhibit P**. At paragraphs 5 and 6 of that Order the district court had this to say about Mr. Griffis and the objection he filed in *Hess*:

> Stephen C. Griffis has filed objections on behalf of Dmetry Krememepsky and Jane McClain. Griffis is a **well-known professional objector** and Griffis failed to comply with the directive of this Court to state his objection history by the objection deadline. Griffis cited a frivolous attorney-client confidentiality rationale for failure to comply, despite the fact that objections are matters of public record and Griffis has himself served as the client in some past objections. Griffis has not provided a good

faith rationale for failing to comply with the Court's approved notice plan, and consequently Griffis lacks standing for the objection.

Even if Griffis had standing, the objection is meritless. The Griffis filing demonstrates that Griffis failed to review the Agreement and notice plan at even a superficial level. Griffis does not contend that he was unable to review the settlement or prohibited from a review of all settlement documents, but he nonetheless argues that notice was inadequate. He also contends that the Court should have scheduled the final approval hearing following the claims deadline, but that is exactly what the notice plan provided. No other objector provided similar arguments to the Court.

(Emphasis added).  Similarly, Mr. Griffis (and Mr. Pentz) failed to review the PACER docket, website, or fee motion in this case before filing the Objection. The *Hess* objectors represented by Mr. Griffis are now appealing the Amended Order.  Mr. Griffis's professional objection practice includes: *In re Netflix Privacy Litig.*, No. 5:11-CV-379-EJD (N.D. Cal. 2012); *Spinelli v. Capital One Bank*, No. 8:08-cv-132-T-33EAJ (M.D. Fla. 2010); *In re Online DVD Rental Antitrust Litig.*, No. 4:09-md-2029-PJH (N.D. Cal. 2012).

Mr. Pentz's professional objection practice is likewise extensive and dates back to the early 2000s. *In re Compact Disc Minimum Advised Price Antitrust Litigation*, MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) (Pentz "appears to be a repeat objector" who "filed a groundless objection", court imposed Rule 7 appeal bond); *In re Charter Communications, Inc.*, MDL 1506, No. 02-CV-1186 (E.D. Mo. June 30, 2005) (Dkt. 332) (Pentz objection to fees overruled); *Spark v. MBNA Corp.*, 289 F.Supp.2d 510, 514 (D. Del. 2003) ("The objector's

'opposition' to class counsel's fee petition appears to be nothing more than an attempt to receive attorneys' fees."); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 285 (3d Cir. 2009)(Pentz objection denied); *In re AOL Time Warner ERISA Litig.,* No. 02–8853, 2007 WL 4225486, at *3 (S.D.N.Y. Nov. 28, 2007) (calling Pentz's arguments "counterproductive" and "irrelevant or simply incorrect"); *Taubenfeld v. AON Corp.,* 415 F.3d 597 (7th Cir. 2005) (affirming district court's decision overruling Pentz's "conclusory" objection to fees and expenses that "barely warrants comment"). *In re Initial Public Offering Securities Litigation*, 728 F.Supp.2d 289, 294-95 (S.D.N.Y. 2010) is particularly on point:

> Finally, there is evidence of bad faith or vexatious conduct by the Objectors. Other courts have found that counsel for the Pentz, Siegel, and Weinstein Objectors are serial objectors and have required them to post bonds in other actions.FN22
>
> > FN22. *See*, *e.g., In re Wal–Mart Wage & Hour Employment Practices Litig*., No. 06 Civ. 225, 2010 WL 786513, at *1 (D.Nev. Mar. 8, 2010) (ordering objectors Pentz and Siegel who appealed the final approval of a class action settlement to post a Rule 7 bond).
>
> Lending further support to the conclusion that, at least, Greene, Siegel, Pentz, and Weinstein are appealing the October 5 Opinion and Order in bad faith is their outright refusal to comply with this Court's Orders. … These questions sought to determine if any of the Objectors' counsel have a pattern or practice of objecting to class action settlements for the purpose of securing a settlement from class counsel. … Greene, Siegel, Pentz, and Weinstein argued that the requests are "not proper" and "did not merit a response." …[T]here is sufficient evidence to conclude that the Siegel, Pentz, and Weinstein

Objectors groups are represented by serial objectors and that all four Objector groups have engaged in bad faith and vexatious conduct ….

…. I concur with the numerous courts that have recognized that **professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.** FN37

> FN37. *See, e.g., Barnes v. FleetBoston*, No. 01 Civ. 10395, 2006 U.S. Dist. LEXIS 71072, at *3 (D.Mass. Aug. 22, 2006) ("Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal)."); *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 295 n. 26 (E.D.Pa.2003) ("Federal courts are increasingly weary of professional objectors: some of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.") (citation omitted).

The same is true in this case. The professional objectors want to extort a greater share of the settlement for themselves without contributing anything of benefit to the Class. To the contrary, their desire for a greater share operates to the detriment of the Class.  The law should and does discourage such self-motivated maneuvers.

17

## VI.   OBJECTOR CANNOT PRESENT EVIDENCE OR ARGUMENT AT FAIRNESS HEARING BEYOND WHAT APPEARS IN HER OBJECTION

The court-approved Notice of Proposed Settlement of Class Action describes precisely what must be included for an effective objection, including "[a] detailed statement of the specific legal and factual basis for each and every objection, including a list of any legal authorities, witnesses, and exhibits the objector may seek to use at the Settlement Fairness hearing." Dkt. 109-1 at 8. The Notice further states that "[a]ny Class Member who fails to timely file such written statement and provide the required information will not be permitted to present any objections at the Settlement Fairness Hearing." *Id.* To be timely, an objection had to be filed on or before February 15, 2013.

Objector's objection was filed on February 14, 2013, containing: a) a heading referring to this case; b) her name, address and telephone number; c) identification of the wells in which she owns royalty interest and her Cimarex royalty owner number. Dkt. # 96 at 1. The Objection also shows her notarized signature. *Id.* at 12. And, it states she "intends to appear and argue" at the Settlement Fairness Hearing. Dkt. 96 at 1. But the Objection does not mention any witnesses or exhibits that she may seek to use at the Hearing. Dkt. # 96. And her required "legal authorities" are mostly outdated inapplicable federal cases, and only one inapplicable Oklahoma case. *See* Sec. II & III, *supra.* Consequently, the

objector has no evidence and no applicable law to present at the Settlement Fairness Hearing.  The objection should be overruled.

## VII.   CONCLUSION

Objector's mistaken facts and reliance on federal law in fee-shifting cases rather than Oklahoma law in this contingent fee initiated class action warrants overruling the Objection (Dkt. No. 96) and approving the otherwise uncontested Plaintiff Class's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Incentive Amount and Brief in Support (Dkt. No. 91).

Respectfully submitted,

/s/ Rex A. Sharp
Rex A. Sharp OK #011990
Gunderson, Sharp & Walke, L.L.P.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0500
(913) 901-0419 fax
rsharp@midwest-law.com

Jon K.Parsley OK #16289
Jon K. Parsley PLLC
112 NE 4th Street
Guymon, OK 73942
(580)-338-8764
jparsley@ptsi.net

SETTLEMENT CLASS COUNSEL

## **CERTIFICATE OF SERVICE**

On March 18, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:  ndavis@swlaw.com, jkilroy@swlaw.com, jyates@swlaw.com and bwelsh@gablelaw.com.

/s/ Rex A. Sharp