## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) Hitch Enterprises, Inc.; | ) | |
| (2) David D. Duncan; and | ) | |
| (3) Sagacity Inc., on behalf of | ) | |
| themselves and all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. CIV-11-13-W** |
| | ) | |
| (1) Cimarex Energy Co.; | ) | |
| (2) Key Production Company, Inc.; | ) | |
| (3) Magnum Hunter Production, Inc.; | ) | |
| (4) Prize Energy Resources, L.P.; and | ) | |
| (5) Gruy Petroleum Management | ) | |
| Company (n/k/a Cimarex Energy | ) | |
| Company of Colorado), | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF CLASS'S MOTION TO SEVER OBJECTOR'S CLAIM, OR ALTERNATIVELY, REQUIRE AN APPEAL BOND AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

Statement of Facts ........................................................................ 1

Arguments ................................................................................... 7

I.   THE CLAIMS OF OBJECTOR LATHROP SHOULD BE
     SEVERED FROM THOSE OF THE SETTLEMENT CLASS
     AND LITIGATED OR APPEALED SEPARATELY ...................... 7

     A.   Rule 23(e)(5) Permits Severing Objector Claims ................... 7

     B.   The Court May Sever Objector's Claims Under Rule 54(b) ... 8

     C.   Objector Lathrop Does Not and Will Not Protect The
          Class ...................................................................... 11

II.  IN THE EVENT HER CLAIM IS NOT SEVERED, OBJECTOR
     LATHROP SHOULD BE REQUIRED TO POST AN APPEAL
     BOND ........................................................................... 12

     A.   Delay Damages ...................................................... 13

          1.  Additional Costs of Claims Administration Due to
              Delay .............................................................. 14

          2.  Additional Interest Damages Due to Delay ..................... 15

     B.   Costs to Issue Additional Class Settlement Notice ................ 16

     C.   Costs Associated With Appellate Briefing ........................... 17

CONCLUSION ........................................................................... 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Allapattah Services, Inc. v. Exxon Corp.*, 91-0986-CIV,
2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ........................................15, 17

*Barnes v. Fleetboston Fin. Corp.*, CA 01-10395-NG, 2006 WL 6916834
(D. Mass. Aug. 22, 2006)........................................................................13, 15

*Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1,
100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).........................................................9, 10

*Dennings v. Clearwire Corp.*, 2013 WL 945267 (W.D. Wash. 2013).......13

*Georgine v. Amchem Products, Inc.*, 157 F.R.D. 246 (E.D. Penn. 1994) ..10

*In re Diet Drugs (Phentermine, Fenfluramine, Dexenfluramine) Prods.
Liab. Litig.*, Civ.A. 99-20593, 2000 WL 1665134
(E.D. Pa. Nov. 6, 2000)...............................................................................18

*In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004).............14

*In re Checking Account Overdraft Litig.*, No. 09-MD-02036,
2012 WL 456691 (S.D. Fla. Feb. 14, 2012) .......................................*passim*

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)......................12, 14

*In re Initial Public Offering Securities Litigation*, 728 F.Supp.2d 289
(S.D.N.Y. 2010) ................................................................................... 12-13

*In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2007 WL 1963063
(D.N.J. July 2, 2007) ...................................................................................18

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124
(S.D.N.Y. 1999)...........................................................................................14

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*,
No. 11-MD-2247, 2012 WL 3984542 (D. Minn. Sept. 11, 2012)
............................................................................................13, 15, 17, 18

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
No. 06 Civ. 225, 2010 WL 786513 (D. Nev. Mar. 8, 2010)................12, 16

*Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau*,
702 F. Supp. 60 (S.D.N.Y. 1988)................................................................14

*Oklahoma Turnpike Auth. V. Bruner*, 259 F.3d 1236 (10th Cir. 2001)......10

*Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222
(10th Cir. 2002)............................................................................................9

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ...................................10

*Pedraza v. United Guar. Corp.*, 313 F.3d 1323 (11th Cir. 2002) ..............15

*Scott v. Capital Financial Services, Inc.*, 277 F.R.D. 316
(N.D. Texas 2011)........................................................................................10

*Stockman's Water Co., LLC v. Veca Partners, LP*, 425 F.3d 1263
(10th Cir. 2005)........................................................................................9, 10

## STATUTES AND LEGISLATIVE HISTORY

Fed.R.App.P. 7 ....................................................................................*passim*

Rule 23 ..................................................................................................8, 11

Rule 23(e)(5) ...............................................................................................7

Fed.R.App.P. 37 ........................................................................................12

Fed.R.App.P. 38 ........................................................................................12

Fed.R.App.P. 39 ..................................................................................12, 16

Fed.R.App.P. 39(e) .............................................................................12, 17

Rule 54(b)........................................................................................8, 9, 10

Plaintiff Class moves to sever the approximately $25 claim of the lone Objector Katherine Riesen Lathrop from the $16.4 million Settlement Fund for the benefit of the 29,689 member Settlement Class, or, in the alternative, to require a $3.1 million appeal bond for delay damages, increased costs of administration, and costs of appellate briefing, if she files an appeal from the final judgment in this case.

## Statement of Facts

1.     Plaintiff Class received preliminary approval for the proposed Settlement Agreement on January 1, 2013.  Dkt. 83.  Plaintiff Class received approval for the plan of allocation and distribution on February 8, 2013.  Dkt. 89.

2.     Class Settlement Notice was provided to the proposed Settlement Class Members pursuant to the Court's approved terms of the settlement notice and notice distribution methodology. Dkt. 83; Dkt. 109.

3.     Plaintiff Class filed its motion for final approval of the Settlement Agreement on March 18, 2013 (Dkt. 128-129), and motion for approval of fees, expenses and incentive award on February 11, 2013. Dkt. 91.

4.     There are approximately 29,689 Class Members in the proposed Settlement Class (including Objector Lathrop). Dkt. 127 at 7.

5.     The total settlement is $16.4 million. Dkt.129 at 3; Dkt. 82-2 at 4-5.

6.     Only one Settlement Class Member, Katherine Riesen Lathrop, filed an objection to the proposed attorney's fee and incentive award on February 14, 2013.  Dkt. 96.  Objector's request for relief is that Class Counsel should receive 25% of the settlement fund, rather than the 33.3% as requested in the motion for approval and class settlement notice and that the Class Representatives should receive less than the 1% incentive award set forth in the Class Notice.  Dkt. 96 at 3-5, 8-10; Dkt. 91.

7.     No Settlement Class Members, including Katherine Riesen Lathrop, filed any objections to the terms of the Settlement Agreement itself, the terms of the settlement notice and notice distribution methodology, the proposed litigation expense reimbursement, or the terms of the proposed Plan of Allocation and Distribution.  *See* Dkt. 96 at 1 (describing the limits of Objector Lathrop's objection to attorney's fees percentage and class representative incentive award).

8.     Objector Lathrop is represented by attorneys John J. Pentz (Dkt. 130) and Stephen Griffis (Dkt. 122, 96), both of whom have been found by one or more courts to be "professional objectors" and roundly criticized.  Dkt. 127 at 20-23.

9.     Objector Lathrop has an exceedingly small royalty interest in two wells operated by Cimarex.  Dkt. 96 at 1, n. 1.

10.     Although Objector Lathrop filed a written objection, she provided no attached evidence or listing of any witnesses at the time of such filing. Dkt. 96.

11.     Objector Lathrop's written objection begins by accusing Class Counsel of not filing the motion for attorney's fees and litigation expenses before the deadline for the filing of objections when the motion, in fact, was filed before the objection deadline.  Dkt. 127 at 7 n. 1, and at 9-10.

12.     Objector Lathrop's written objection also incorrectly represents to the Court that the Tenth Circuit has established a standard 25% fee award in cases such as this one.  Dkt. 96 at 3-5.  But this case is based on the Court's diversity jurisdiction. As such, state law, in this case Oklahoma law, governs the award of attorney's fees under Tenth Circuit precedent. Oklahoma law typically supports a 33% to 40% or more fee award.  Dkt. 127 at 10-18.

13.     At the time of the final approval hearing, March 22, 2013, attorney John J. Pentz appeared on behalf of Objector Lathrop.  Dkt. 132.  Objector Lathrop did not appear personally, contrary to the terms of the preliminary approval order (Dkt. 83) and the approved Class Settlement Notice (Dkt. 109-1).  Attorney Griffis, local counsel of record for Objector Lathrop, did not appear. Dkt. 122, 132.

14.     At the time of the final approval hearing, March 22, 2013, attorney John J. Pentz simply re-argued his position in the Objection (Dkt. 96) to the Court for 2-3 minutes, without reference to any additional authority or facts.  Dkt. 132. Mr. Pentz did not proffer any documents or expert or lay affidavits into evidence; he did not proffer any expert or fact witnesses; he did not request the opportunity

3

to cross-examine any witnesses available at the hearing on behalf of Plaintiff Class.

Dkt. 132.  Objector never filed any reply to Plaintiff Class's Response to

Objection.  *See* case docket and Dkt. 120, 127.  Objector has not cited any cases

specifically involving Oklahoma class action fee awards despite admitting that

Oklahoma law governs the fee award in this case.  Dkt. 96 at 6; Dkt. 132; Dkt 127

at 1-2.

15.     Assuming a 36% combined fee, expense, and incentive award,

Objector would "receive a combined **net** amount of approximately $22.47.  Dkt.

89.  If the Court approves the 25% fee Ms. Lathrop suggests instead, and awards

no incentive award, she would recover approximately $26.33.  **The difference is**

**less than $4.00!**"  Dkt. 127 at 8 (emphasis in original).

16.     Should the Court finally approve the Settlement Agreement, finding

that the proposed Settlement Agreement is fair, reasonable and adequate, and that

the proposed 33.3% fee award, litigation expense amount and class representative

incentive award are all fair and reasonable, the only obstacle to distributing the

millions of dollars in settlement proceeds to the 29,688 Settlement Class Members

who did not object, would be the attorney's fee differential of approximately $4.00

asserted by a single Objector, represented by acknowledged professional objectors.

*See* Dkt. 127 at 7-8.

17.    By not objecting or opting-out, a total of 29,688 Settlement Class members have expressed their desire to be paid the proceeds of the settlement fund **now**.  *See* Dkt. 127 at 7-8 (29,689 less one objector).

18.    Assuming Objector Lathrop and her counsel appeal the Court's award of attorney's fees to the Tenth Circuit (in order to extract money from Class Counsel solely designed to benefit the Objector and the Objector's Counsel) (Dkt. 127 at 8), the Settlement Class Members will wait at least one year and maybe two years to receive their distributions from the settlement fund.  At statutory post-judgment interest rates, a one year delay would cost Settlement Class Members approximately $1,435,000.00, and a two year delay would cost Settlement Class Members another $1,560,562.50, for a total of $2,995,562.50.  *See* attached Declaration of Rex A. Sharp attached as Exhibit A.

19.    Pursuant to the preliminary approval order (Dkt. 83), the cost of providing the original Settlement Class Notice was over $90,000 of the $98,652.33 settlement administration expenses provided to date.  Affidavit Regarding Additional Administration Costs Associated with Delay in Benefit Disbursement, attached as Exhibit B ("Dekdebrun Aff.").  Approximately $90,000 will be necessary to provide a second Settlement Class Notice explaining the objection, appeal, and likely delay.

20.    The costs of securing the record and transcript, copying and mailing costs related to appellate briefing are less than $1,000.  *See* attached Declaration of Rex A. Sharp.

21.    If distribution of the Settlement Funds is delayed for one year as a result of Objector Lathrop's appeal, the Settlement Administrator estimates the total cost to administer the Settlement will increase by approximately $8,000-$12,000 because settlement administration services would be extended. Specifically, additional time and expenses would be incurred to extend: "a) project management, including interaction with counsel, supervision of project team, and resolution of issues; b) call center activity, including monthly toll-free charges and time spent answering and documenting calls; c) determining Class Member benefits, including efforts to resolve issues arising from Class Members passing away or changes in royalty ownership; and d) disbursing benefits, including a higher undeliverable rate for mailed benefits due to Class Members moving, as well as increased time spent reissuing checks that cannot be negotiated due to Class Members passing away or changes in royalty ownership."  Dekdebrun Aff., Ex. B.

## Arguments

## I.   THE CLAIMS OF OBJECTOR LATHROP SHOULD BE SEVERED FROM THOSE OF THE SETTLEMENT CLASS AND LITIGATED OR APPEALED SEPARATELY

Objector Lathrop is the sole objector to the requested attorney's fees and incentive award.  There are no objectors to the terms of the Settlement Agreement. Any liability, causation, damages, or release issues have been resolved by the Settlement Agreement.  Because Objector did not object to any terms of that Settlement Agreement, she is bound by its terms.  Under the Plan of Allocation and Distribution, Objector's recovery from the settlement fund under the Settlement Agreement is $22.47. Dkt. 89 at 3 (assuming a fee of 36% of the Common Fund Settlement Proceeds for Class Counsel's Fees and Expenses). Objector also did not object to the Plan of Allocation and is similarly bound by its terms.  Objector urges 25% fee instead of Class Counsel's request of one-third.  The difference is no more than $4.00.

### A.   Rule 23(e)(5) Permits Severing Objector Claims

The only reference to objectors is found in Rule 23(e)(5):

Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Clearly, a class member may object, but the Objector only represents herself. Nowhere is there any suggestion that a single objector may represent any other

non-objecting settlement class members in any capacity.  The Court has not

evaluated her or her counsel to represent anyone other than herself unlike the

Court's evaluation of the Class Representatives and Class Counsel. Dkt. 83.

This means Rule 23 does not in any way impact or impede the Court's

discretion to otherwise sever the attorney's fee or incentive award disagreement of

one settlement class member from all remaining settlement class members who do

not object (and have not objected) to whatever the Court decides in its discretion to

award as attorney's fees or an incentive award.  This would allow the Class to be

paid (29,688 Class Members), and the Objector to continue to pursue her $4.00

objection. Only a small portion of the settlement fund at issue would need to be

preserved for the Objector.

### B.   The Court May Sever Objector's Claims Under Rule 54(b)

The Court may sever Objector's claims from the remaining Settlement Class

Members under Rule 54(b), and enter a final judgment for the other 29,688 non-

objecting Settlement Class Members.  Objector may then separately appeal the

Court's ruling on her attorneys' fee and incentive award determination (and/or

Class Counsel could simply choose to confess judgment for the entire amount of

Objector's claim).

Rule 54(b) states as follows:

**Judgment on Multiple Claims Involving Multiple Parties.** When an
action presents more than one claim for relief—whether as a claim,

counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

This Rule authorizes the district court to make a final adjudication of claims that are "final" so that they are immediately appealable. By expressly determining that no just cause exists to delay the entry of final judgment, the district court frees the parties to seek appellate review of issues finally determined without having to wait until Objector's litigation is final. The district court must articulate its reasons for a Rule 54(b) severance. *See Stockman's Water Co., LLC v. Veca Partners, LP*, 425 F.3d 1263, 1265 (10th Cir. 2005) ("We have explained that courts entering a Rule 54(b) certification should 'clearly articulate their reasons and make careful statement based on the record supporting their determination of 'finality' and 'no just reason for delay' so that we [can] review a 54(b) order more intelligently [ ] and thus avoid jurisdictional remands.' *Old Republic Ins. Co. v. Durango Air Serv., Inc.,* 283 F.3d 1222, 1225, n. 5 (10th Cir. 2002)."). The Tenth Circuit in *Stockman's Water Co.* describes step-by-step the Rule 54(b) analysis:

First, the district court must determine that its judgment is final. *See Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). Second, the district court must determine that no just reason for delay of entry of its judgment exists. *Id.* at 8, 100 S.Ct.

1460. . . . In making these determinations, the district court should act as a "dispatcher" weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying the appeal. *Id.* at 8, 100 S.Ct. 1460; *Oklahoma Turnpike Auth.* [*v. Bruner*, 259 F.3d 1236 (10th Cir. 2001)] at 1241.  Factors the district court should consider are "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp.,* 446 U.S. at 8, 100 S.Ct. 1460.

*Stockman's Water,* 425 F.3d at 1265.

These prerequisites are met in this case to sever the Objector's claim to an increased amount based on her attorneys' fee and incentive award objections. [1] First, the district court's order severing the one (1) objecting Class Member's claim from the 29,688 non-objecting Class Members would allow those thousands of Class Members to reach final judgment (and there would be no appeal since there were no objections).  Second, there is no just reason to delay entry of judgment for the 29,688 Class Members who want

---

[1]      Severance of individual parties or claims in the context of class action litigation or settlement is not novel.  *See generally*, *Stott v. Capital Financial Services, Inc*., 277 F.R.D. 316, 324 (N.D. Texas, 2011) (court granted a joint motion to sever individual claims involving a class action settlement);  *Parker v. Anderson*, 667 F.2d 1204, 1208 (5th Cir. 1982) (defendant agreed to sever the individual claims of the named plaintiffs, which were still pending at the time of class settlement); and *Georgine v. Amchem Products, Inc*., 157 F.R.D. 246, 323 (E.D. Penn., 1994) (Court permitted provision in settlement agreement for a joint motion by class members and defendant to sever third party contribution claims in context of class action settlement).

exactly that. Third, by severing, no appellate court would have to consider the objection more than once (if at all).

### C.    Objector Lathrop Does Not and Will Not Protect The Class

To the extent there is any concern that severing Objector Lathrop's claims may somehow diminish protections to the Settlement Class, those concerns are misplaced.  First, the only remaining issue involves attorneys' fees and incentive award and the Court is deemed an expert on those issues, without regard to the presence of any objectors.  It is the Court's duty to oversee the fee awards and the Court needs no help from this Objector in doing so.  Second, 29,688 Settlement Class Members did not object, sending a clear message that they are satisfied with the request for fees by Class Counsel and the Class Representatives.   Third, Ms. Lathrop's objection is clearly motivated by professional objectors, who are not concerned with the financial interests of the Settlement Class.  Dkt. 127 at 20-23. In fact, these professional objectors thought so little of their objector's role that they mis-stated the facts in their objection (Dkt.127 at 9-10), failed to present any evidence or testimony at any stage of the proceedings, and failed to have Ms. Lathrop appear at the final approval hearing. Severance does nothing to harm the Settlement Class or the Rule 23 settlement approval process in this instance. To the contrary, severance permits the settlement process to proceed without being held up by the lone Objector.

## II.    IN THE EVENT HER CLAIM IS NOT SEVERED, OBJECTOR LATHROP SHOULD BE REQUIRED TO POST AN APPEAL BOND

If Objector chooses to appeal the Court's determination on attorneys' fees and incentive award, Plaintiff Class seeks an appeal bond under Federal Rule of Appellate Procedure, Rules 7, 37, and 39.   Plaintiff Class asks that the appeal bond be set in a sufficient amount to recover delay damages, the costs of a second settlement class notice advising the other non-objecting class members about the delay in distribution, additional claims administration costs occasioned by the delay, and costs associated with appellate briefing under Fed. R. App. P. 7, 37, and 39(e).  *See* Ex. A and B, Declaration of Rex A. Sharp and Dekdebrun Aff., respectively.  Plaintiff Class reserves its rights to separately seek attorneys' fees based upon the vexatious conduct of Objector Lathrop and Objector's counsel and damages and costs for frivolous appeal under Fed. R. App. P. 38.

Mr. Pentz and Mr. Griffis are professional objectors, and courts have had little difficulty imposing appeal bonds where they are involved.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) (ordering a $35,000 appeal bond against Pentz's client);  *In re Wal–Mart Wage & Hour Employment Practices Litig.*, No. 06 Civ. 225, 2010 WL 786513, at *1 (D.Nev. Mar. 8, 2010) (ordering objectors Pentz and his co-counsel who appealed the final approval of a class action settlement to post a Rule 7 bond for $500,000);  *In re Initial Public Offering Securities Litigation*, 728 F.Supp.2d

289 (S.D.N.Y. 2010)( ordering a $25,000 appeal bond against Pentz); *Barnes v. Fleetboston Fin. Corp.*, CA 01-10395-NG, 2006 WL 6916834, at *2 (D. Mass. Aug. 22, 2006) (ordering an $645,111.60 appeal bond against Pentz's client and labeled both Feldman and Pentz as "professional objectors"). Notably, there is no evidence that Mr. Pentz (or his objector client) has ever paid or posted any of these bonds. [2]

Here, Plaintiff Class seeks an appeal bond against Mr. Pentz, Mr. Griffis, and Objector Lathrop in the total amount of $3.1 million, reflecting approximately $3 million in delay damages for two years, $90,000 in costs to issue an additional class settlement notice to apprise Settlement Class Members about the objection, court ruling and anticipated appeal, $12,000 in anticipated additional claims administrative costs associated with the delay, and $1,000 in costs associated with appellate briefing.

## A. Delay Damages

Delay damages are a permissible component of a Rule 7 bond. One cause of delay damages are additional costs attributable to claims administration. The other

---

[2] The same is true with other professional objectors. *See generally Dennings v. Clearwire Corp.*, 2013 WL 945267 (W.D. Wash. 2013) (imposing appeal bond on professional objectors); *In re Uponor*, 2012 WL 3984542 (imposing $170,000 appeal bond on professional objectors); *In re Checking Account Overdraft Litig.*, 2012 WL 456691 at *3 (imposing $616,338 appeal bond on professional objectors).

delay damage involves the interest lost by the Settlement Class due to delay.  Both

are recoverable under Rule 7.

### 1.    *Additional Costs of Claims Administration Due to Delay.*

The delay that results from an appeal adds to claims administration costs:

> In addition to costs related to the appeal, the Settlement Class also seeks a
> bond for costs caused by delay of implementing the settlement.
> Specifically, the parties to the Settlement Agreement hired a claims
> administrator to handle incoming claims, and because an appeal will likely
> not be resolved for approximately twelve months, the parties expect the
> claims administrator to charge an extra $20,000 for additional
> administrative functions during the delay. *See* Raiter Rule 7 Aff. ¶ 6. The
> Objectors protest that the delay caused by the appeal will not increase class
> member inquiries or claims, that any delay was anticipated and therefore
> not causally related to the appeal, and that they have no obligation to
> ensure the availability of the judgment.

> Costs incurred as a result of delay of a settlement caused by an appeal are
> recoverable under Rule 7. An appeal bond is a "guarantee that the appellee
> can recover from the appellant the damages caused by the delay incident to
> the appeal." *In re NASDAQ Market–Makers Antitrust Litig.,* 187 F.R.D.
> 124, 128 (S.D.N.Y.1999) (quoting *Morgan Guaranty Trust Co. of N.Y. v.
> Republic of Palau,* 702 F.Supp. 60, 65 (S.D.N.Y.1988)). Numerous courts
> have awarded costs incurred by delays caused by objectors' appeals in a
> class action settlement. *See In re NASDAQ Market–Makers Antitrust Litig.,*
> 187 F.R.D. at 128 (awarding a bond for "damages resulting from the delay
> and/or disruption of settlement administration caused by [an] appeal in the
> amount of $50,000"); *In re Checking Account Overdraft Litig.,* No. 1.09–
> MD–2036, 2012 WL 456691 (S.D.Fla. Feb. 14, 2012) (ordering a bond in
> excess of $616,000 because the appeal "prevent[ed] distribution of the
> Settlement proceeds as ordered by this Court's Final Judgment"); *In re
> Cardizem CD Antitrust Litig.,* 391 F.3d 812, 818 (6th Cir.2004) (affirming
> the trial court's imposition of an appeal bond including $123,429 in
> incremental administration costs because the appeal had "the practical
> effect of prejudicing the other injured parties by increasing transaction
> costs and delaying disbursement of settlement funds"); *In re Compact Disc
> Minimum Advertised Price Antitrust Litig.,* No. MDL 1361, 2003 WL

22417252 (D.Me. Oct. 7, 2003) (awarding a $35,000 bond, an amount which included fees for settlement administration and the cost of tracking down class members who moved during the appeals period).

Courts treat with particular disapproval the objections and appeals of "professional objectors," whose objections amount to a "tax that has no benefit to anyone other than to the objectors" but serves to "tie up the execution of [a] Settlement and further delay payment to the members of the Settlement Class...." *In re Checking Account Overdraft Litig.,* 2012 WL 456691, at *2.

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.,* 11-MD-2247

ADM/JJK, 2012 WL 3984542, at *4-5 (D. Minn. Sept. 11, 2012).  Here, additional

claims administration costs attributable to delay are $8,000-$12,000.  *See*

Dekdebrun Aff., Ex. B. Cimarex would be able to recover those additional costs as

it is responsible for claims administration.

## 2.    *Additional Interest Damages Due to Delay*

Because an appeal delays distribution of the settlement fund to the Class

Members, the Settlement Class loses the time value of that money.

Fed. R.App. P. 7 provides that: "[I]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Pursuant to Rule 7, the Court will require Westheimer to post an appeal bond in an amount sufficient to cover the damages, costs and interest that the entire class will lose as a result of the appeal. *See Pedraza v. United Guar. Corp.,* 313 F.3d 1323, 1328 (11th Cir.2002). The amount of the bond will be $13,500,000.00.

*Allapattah Services, Inc. v. Exxon Corp.*, 91-0986-CIV, 2006 WL 1132371, at *18

(S.D. Fla. Apr. 7, 2006).  *See Barnes v. FleetBoston Fin. Corp.,* No. 01-10395-NG,

2006 WL 6916834, at *3 (D.Mass. Aug. 22, 2006) (ordering objecting class member to post an appeal bond in the amount of $645,111.60 which represented "5.15% interest on a settlement of $12.5 million…[from] the date of judgment for one year (assume the case takes one year to go through the appellate process)" and estimated attorneys' fees and costs on appeal. Pentz was objector's counsel.); *In re Wal-Mart Wage & Hour Employment Practices Litig.*, MDL 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) ("While it is difficult to calculate with mathematical precision the duration of Objectors' appeal, or the administrative costs and interest costs to the potentially more than 3 million class members, or other costs reasonably incurred under Rule 39 of the Federal Rules of Appellate Procedure, the Court finds the sum of $500,000 per Objector to be reasonable." Pentz was objector's counsel.); *In re Checking Account Overdraft Litig.,* No. 1:09–MD–02036–JLK, 2012 WL 456691, at *2 (S.D.Fla. Feb.14, 2012). Here, the Plaintiff Class seeks to include damages due to interest delay in the amount of $2,995,562.50 based on an anticipated two year delay in the distribution of the $16.4 million (plus interest) in Settlement Funds. *See* Declaration of Rex A. Sharp, Ex. A.

### B.   Costs to Issue Additional Class Settlement Notice

Rule 7 also permits a bond covering the cost to issue additional settlement class notice as a result of an objection and objector appeal.

The Settlement Class also requests a $500,000 bond to cover the costs of any additional class notice that may be required due to the delay caused by the appeal….

A bond in the amount of $125,000 in this case is sufficient to ensure that appellees' rights are protected. This amount reflects that the appeal will result in a significant delay of the claims process and ultimate payment to class members. Courts have approved much higher Rule 7 bonds in the class settlement context. *See, e.g., Allapattah,* 2006 WL 1132371, at *18 (imposing a bond in the amount of $13.5 million because of the "highly detrimental impact of an appeal of the settlement agreement as to the entire class"); *In re Checking Account Overdraft Litig.,* 2012 WL 456691, at *3 (imposing a $616,000 bond because of the delay caused by an appeal). The Court finds that additional class notice may be required due to the delay occasioned by the appeal, and that a bond of $125,000 is sufficient to protect the appellees. Because the initial class notice program cost nearly $1 million, it is reasonable to discern that an additional notice would likely cost significantly more than $125,000. *See* Raiter Rule 7 Aff. ¶¶ 7–9. For these reasons, the Court finds that $125,000 is adequate and necessary to protect the appellees on these potential costs.

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *5-6 (D. Minn. Sept. 11, 2012). Here, the Plaintiff Class seeks to include the costs of a second class notice to explain to the 29,689 Class Members what is happening and why their Settlement Distributions remain in limbo. The estimated cost of such notice is approximately $90,000. *See* Dekdebrun Aff., Ex. B.

## C.   Costs Associated With Appellate Briefing

Rule 7 also permits an appeal bond to cover costs associated with appellate briefing and the underlying record as set out in Fed. R. App. P. 39(e).

The Settlement Class seeks a $25,000 bond in costs related to the Objectors' appeals. Costs that may be taxed in an appeal bond include the costs of preparing and transmitting the record, the costs of obtaining necessary transcripts, printing costs, and other copying costs. *In re Ins. Brokerage Antitrust Litig.,* 2007 WL 1963063, at *2. Courts routinely approve bonds for appeal-related costs of $25,000. *See id.* at 2–3; *In re Diet Drugs (Phentermine, Fenfluramine, Dexenfluramine) Prods. Liab. Litig.,* Civ.A. 99–20593, 2000 WL 1665134, at *4–5 (E.D.Pa. Nov. 6, 2000).

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *3-4 (D. Minn. Sept. 11, 2012).  Here, Plaintiff Class seeks only $1,000 for direct appeal costs. *See* Declaration of Rex A. Sharp, Ex. A.

## Conclusion

For all of the reasons set forth above, Plaintiff Class asks the Court to sever the claims of Objector Lathrop or, alternatively, set an appeal bond to be posted by Objector and her counsel in the total amount of $3.1 million.

Respectfully submitted,

/s/ Rex A. Sharp
Rex A. Sharp OBA#011990
Gunderson, Sharp & Walke, L.L.P.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0500
(913) 901-0419 fax
rsharp@midwest-law.com

Jon K. Parsley OBA#16289
Jon K. Parsley PLLC
112 NE 4th Street
Guymon, OK 73942
(580)-338-8764
jparsley@ptsi.net

## **CERTIFICATE OF SERVICE**

On April 11, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the ECF registrants, including counsel for all parties and Objector Lathrop.


/s/ Rex A. Sharp