IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA **FILED**

HITCH ENTERPRISES, INC., DAVID          )
D. DUNCAN and SAGACITY, INC., on        )
behalf of themselves and all others     )
similarly situated,                     )
                                        )
              Plaintiffs,               )
                                        )
vs.                                     )
                                        )
CIMAREX ENERGY CO., KEY                 )
PRODUCTION COMPANY, INC.,               )
MAGNUM HUNTER PRODUCTION,               )
INC., PRIZE ENERGY RESOURCES,           )
L.P., and GRUY PETROLEUM                )
MANAGEMENT COMPANY (n/k/a               )
Cimarex Energy Company of Colorado), )
                                        )
              Defendants.               )

JUL - 2 2013

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____ DEPUTY

No. CIV-11-13-W

## ORDER APPROVING SETTLEMENT AGREEMENT

Plaintiffs Hitch Enterprises, Inc. ("Hitch"), David D. Duncan ("Duncan") and Sagacity,

Inc. ("Sagacity"), on behalf of themselves and a putative class of similarly-situated royalty

owners, sued defendants Cimarex Energy Co., Key Production Company, Inc., Magnum

Hunter Production, Inc., Prize Energy Resources, L.P., and Gruy Petroleum Management

Company (n/k/a Cimarex Energy Company of Colorado)(hereafter collectively "Cimarex"),

for alleged underpayment or non-payment of royalties on natural gas and/or constituents

of the gas stream produced from wells in Oklahoma. The parties advised the Court that

the matter had settled, and on January 3, 2013, the Court conditionally certified the

Settlement Class, preliminarily approved the Settlement and approved the form and

manner of Notice. See Doc. 83.

The Court conducted the Settlement Fairness Hearing held on March 22, 2013, and heard argument on the plaintiffs' Motion for Order Finally Approving Class Action Settlement [Doc. 128] filed on March 18, 2013. Upon review of the record, the Court GRANTS said motion. The instant Order[1] memorializes the Court's findings, conclusions and directives.

1. The Court has jurisdiction over the subject matter of this action and over (a) the plaintiffs, Hitch, Duncan and Sagacity, (b) Cimarex and (c) each Class Member, which term is defined by the parties' Settlement Agreement and excludes those persons and entities that have timely and validly exercised their right to opt-out of the Settlement Class.

2. The Settlement Class is defined by the parties' Settlement Agreement as:

> All royalty owners (including predecessors, successors, and assigns) in Class Wells (as defined in Paragraph 1.8 of the Settlement Agreement) in which Cimarex Energy Co. (as defined in Paragraphs 1.2, 1.11 and 1.22 of the Settlement Agreement) owns a working interest.
>
> Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); (2) Defendants, their affiliates, and employees, officers and directors; (3) any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, gathering, processing, or marketing; (4) the gas production, royalties, claims, and other matters covered by the settlement in *Lawrence v. Cimarex Energy Co.*, Caddo County, Oklahoma District Court, Case No. CJ-2004-391; and, (5) the two royalty owners in the Parrish-Novotny 1-32 well in Grady County, Oklahoma who are currently named plaintiffs in *Pummill et al. v. Cimarex Energy Co., et al.,* Grady County, Oklahoma District Court, Case No. CV-2011-82, *i.e.* Mr. Charles Pummill and Mr. Chris Parrish.

---

[1]The definitions in the parties' Settlement Agreement are hereby incorporated by reference and all capitalized terms used herein shall have the same meanings as assigned and ascribed to them in the Settlement Agreement, unless expressly stated otherwise.

Doc. 82-1 at11, ¶ 1.24.

3. As stated, the Court on January 3, 2013, found pursuant to Rule 23, F.R.Civ.P., that all requisites for class certification had been satisfied, and it conditionally certified the Settlement Class. Certification remains appropriate, and the Court now CONFIRMS its findings with respect to the Settlement Class: (a) the persons and entities in the Settlement Class are so numerous that joinder of all persons and entities in the Settlement Class is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the appointed Class Representatives, Hitch, Duncan and Sagacity, are typical of the claims of the Settlement Class; (d) the Class Representatives and appointed Class Counsel, the law firms of Gunderson, Sharp & Walke, LLP, and Jon K. Parsley, PLLC, have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action settlement is superior to other available methods for the fair and efficient adjudication of this controversy, considering: (i) the interests of the persons and entities in the Settlement Class in individually controlling the prosecution of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Settlement Class; (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of this case.

4. In determining whether the parties' Settlement and Settlement Agreement should be approved as fair, reasonable and adequate, the Court has examined the following factors: "(1) whether the . . . [S]ettlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in

3

doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the [S]ettlement is fair and reasonable." Gottlieb v. Wiles, 11 F.3d 1004, 1014 (10th Cir. 1993)(quoting Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984)), overruled in part on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002).

        5.  All relevant factors weigh in favor of approval of the Settlement:

              (a)  The Settlement was negotiated between experienced counsel representing the interests of the Settlement Class and Cimarex and was achieved with the assistance of a highly qualified and experienced mediator.

              (b) Both the plaintiffs and Cimarex were convinced of their legal and factual positions, and the outcome of the litigation in favor of one party was not assured.

              (c) As the record reflects, Cimarex has and would vigorously pursue and defend this litigation, and if not successful, would likely appeal.  The Settlement is substantial, and its value outweighs the mere possibility of future relief after extended and costly litigation.

              (d) Attorneys for the parties have opined both in written submissions and at the Settlement Fairness Hearing that the Settlement is fair, reasonable and adequate for the members of the Settlement Class.

        6.  The Court finds that while members of the Settlement Class may have recovered more damages after a trial and an appeal, Cimarex's liability on the multiple causes of action asserted by the plaintiffs was not assured, and the risk existed that the Settlement Class would recover nothing at all or far less than what was obtained by the Settlement.

Notice was mailed to 29,689 Class Members, and the fact that no Class Member voiced any objection to the Settlement itself indicates wide-spread approval.[2]

7. Balanced against continued litigation and appellate risks, the possibility of statutory changes or legislative enactments that might affect the viability of the claims and/or defenses being pursued and the risk of delay in payment in the event of any recovery, the Court, upon review of the record in its entirety, finds the Settlement as set forth in the Settlement Agreement is fair, reasonable and adequate and is in the best interests of the Class Representatives, the Settlement Class and each Class Member. Accordingly, the parties' Settlement should be and is hereby APPROVED in accordance with Rule 23, supra.

8. The Court therefore ORDERS (a) the Settlement Agreement to be consummated in accordance with its terms and provisions and (b) the parties to perform the terms of the Settlement Agreement.

9. Upon the entry of this Order Approving Settlement Agreement, each and every Class Member is deemed to have accepted and ratified the Settlement Agreement.

10. The Court further finds that the Notice of Proposed Settlement of Class Action, as revised, and the Plan of Notice constituted the best notice practicable under the circumstances to all persons and entities entitled to such notice, including individual notice to all persons and entities in the Settlement Class that could be identified through reasonable effort. The Plan of Notice specified by the Settlement Agreement and the

---

2 Only one objection was filed. That objection, lodged by Class Member Katherine Riesen Lathrop, challenged only the requested amount of attorneys fees and the requested incentive award. It was subsequently withdrawn. See Docs. 139, 140.

5

Notice of Proposed Settlement of Class Action, as revised, that were approved by the Court, fully satisfied the requirements of Rule 23, supra, the requirements of due process and all other applicable law.

11. The Notice of Proposed Settlement of Class Action, as revised, was written in plain English and included (a) a description of the Settlement Class; (b) a description of the proposed Settlement; (c) the names of Class Counsel; (d) a statement of the maximum amount of legal fees that would be sought by Class Counsel; (e) a statement of the maximum amount of the incentive award that would be sought by the three Class Representatives; (f) the date, time and location of the Settlement Fairness Hearing; (g) a description of eligibility to appear at the Settlement Fairness Hearing; (h) a statement of the deadlines for filing objections to the Settlement and for filing requests for exclusion and regarding the contents required for each filing; (i) the consequences of exclusion; (j) the consequences of remaining in the Settlement Class; and (k) instructions on how to obtain further information.

12. Cimarex's records identified those persons and entities to which it was making, or had made, royalty payments, and Cimarex used those records to create a mailing list of Class Members. Cimarex requested third parties to provide similar information for the Class Wells that are operated by these third parties, and Cimarex supplemented its mailing list with the information received from, and provided by, the third parties. Cimarex then caused the Notice of Proposed Settlement of Class Action, as revised, to be sent by first class mail to all Class Members who could be identified. Some mailings were returned by the United States Postal Service, and efforts were made to identify and locate the people and entities whose Notice of Proposed Settlement of Class Action, as revised, had been

6

returned. The Notice of Proposed Settlement of Class Action, as revised, was remailed to those Class Members for whom new addresses had been located.

Information about this litigation could also be found on the Internet, and the Settlement Agreement, the Notice of Proposed Settlement of Class Action, as revised, and the Motion for Awards of Attorneys' Fees, Litigation Expenses, and Incentive Amount as well as other applicable and pertinent documents were posted on a website dedicated to this litigation.

13. Accordingly, adequate notice of the Settlement of this litigation has been given as required by law to the members of the Settlement Class. All members of the Settlement Class have been afforded a reasonable opportunity to opt-out of the Settlement Class and to object to the Settlement. Those individuals and entities that did validly and timely opt-out of the Settlement Class, as listed in the Amended Report of Persons Opting Out of Class Action Settlement and Identification of Non-Class Members, see Doc. 117, are Kaiser-Francis Oil Company; Charlene P. Kaster Trust Dtd 8/19/05; Betty J. Collet; Tower Royalty Company, L.L.C.; Rogers Royalty Company; First United Methodist Church of Maysville, Oklahoma; Rhyesa L. Hamilton; Ashley D. Price; Frank Vincent Wood, III and Jerry Edward Warner, Joint Tenants; Grant J. Wright; Desert Partners III, L.P.; Desert Partners IV, L.P.; Citation 2002 Investment Limited Partnership; Citation 2004 Investment Limited Partnership; Citation Oil & Gas Corporation; Commissioners of the Land Office; Laura M. Armitage; Robert A. Patterson; Diane M. Flock; and Dorothea Paulk. See Doc. 117.

14. The Court finds those persons and entities that are not Class Members may pursue, if they so choose, their own claims in other litigation at their own cost and expense.

No claims by anyone who is not a Class Member are being asserted in this case against Cimarex.

15. The Court further finds that notice of the proposed Settlement was served on the appropriate State and Federal officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711 et seq., see Docs. 134, 135, and that Cimarex has satisfied its obligations under CAFA, and in particular, under section 1715(b).   No appropriate State or Federal official has entered an appearance in this matter or has in any way challenged the Settlement or the Settlement Agreement.   Accordingly, the Court finds that the requirements of section 1715 have been met and, as a consequence, Class Members "may not refuse to comply with or be bound by," 28 U.S.C. ¶ 1715(e)(2), the Settlement and Settlement Agreement.

16. The Court has also considered the fairness, adequacy and reasonableness of the Plan of Allocation and Distribution ("Plan"), as it is required to do.   The Court had previously reviewed and approved the Plan on February 8, 2013, see Doc. 89, and the Plan has not been challenged by any Class Member.   Accordingly, the Court AFFIRMS its prior approval, again finding that the Plan is fair, adequate and reasonable, and APPROVES the Final Allocation and Distribution Schedule.   See Doc. 129-1.

17. The Plan is typical of distribution plans in other royalty owner class actions, and it ensures a recovery of at least $25.00 per Class Well.   The assumptions about who should receive distributions are reasonable and proper and are bolstered by the requirement that anyone receiving funds that rightfully belong to another must pay any such amount to the rightful owner or under certain circumstances, return the Distribution Check to Cimarex. The practical result of the Plan is that the Common Fund Settlement Proceeds are being

8

distributed in proportion to the underpayment claims that were asserted with regard to each Class Well so that Class Members entitled to receive the distributions with respect to alleged underpayments do so on a proportionate basis that reflects the actual production of such wells.

18. Upon the deposit of, or upon causing the deposit of, the Distribution Checks by Cimarex in the United States mail in accordance with the Plan of Notice, the Notice of Proposed Settlement of Class Action, as revised, the Plan of Allocation and Distribution Order and the terms of the instant Order Approving Settlement Agreement, the Class Representatives and each Class Member shall be deemed to have, and by operation of this Order Approving Settlement Agreement and the Final Judgment entered in this matter, shall have, fully, finally and forever released, relinquished and discharged all Released Parties from all Released Claims accruing at any time prior to the Release Date, and shall be forever barred and estopped from asserting any of the Released Claims against any of the Released Parties. Any and all Released Claims are therefore permanently barred, enjoined and finally discharged.

19. Neither the Settlement Agreement nor the Settlement contained therein, nor any act performed or document executed pursuant to, or in furtherance of, the Settlement Agreement or the Settlement

(a) is or may be deemed to be or may be offered, attempted to be offered, or used in any way by the parties as a presumption, a concession, or an admission of or evidence of, any fault, liability or wrongdoing by the Released Parties or the validity of any Released Claims against the Released Parties; or

9

(b) is or may be offered or received as evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal or administrative, against any parties to the Settlement Agreement other than to enforce the terms of the Settlement Agreement or any orders issued by the Court in connection with the Settlement and the Settlement Agreement.

20. Class Representatives, Class Counsel, Cimarex and any Class Member may file the Settlement Agreement or this Order Approving Settlement Agreement in any action

(a) that may be brought against any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, order bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim; or

(b) to enforce or otherwise effectuate the terms of the Settlement Agreement or any orders issued in this matter by the Court in connection with the Settlement and the Settlement Agreement.

21. Without affecting the finality of this Order Approving Settlement Agreement in any way, the Court hereby retains continuing jurisdiction over (a) the implementation of this Settlement and any award or distribution of the Common Fund Settlement Proceeds; (b) the disposition of the Common Fund Settlement Proceeds; and (c) all parties hereto for the purpose of construing, enforcing and administering the Settlement, the Settlement Agreement and the provisions of this Order Approving Settlement Agreement.

ENTERED this 2nd day of July, 2013.

LEE R. WEST
UNITED STATES DISTRICT JUDGE